IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

STACEY GARBOWIT and ALLEY MCINNIS,
individually and on behalf of all persons
similarly situated,

       CASE NO.: 9:25cv80345

    Plaintiffs,

v.

DATAVANT, INC., as successor by merger to
Ciox Health, LLC d/b/a Ciox Health, WEST BOCA
MEDICAL CENTER, INC., a Florida corporation,
and DELRAY MEDICAL CENTER, INC., a
Florida corporation,

    Defendants.
_____/

## NOTICE OF REMOVAL

Defendants Ciox Health, LLC d/b/a Datavant[1] ("Datavant"), West Boca Medical Center, Inc. ("West Boca"), and Delray Medical Center, Inc. ("Delray" and together with "West Boca," the "Facility Defendants") (collectively, "Defendants"), appearing specially so as to preserve any and all defenses available under Rule 12 of the Federal Rules of Civil Procedure, any and all defenses under state and federal law, and specifically preserving the right to demand arbitration pursuant to contractual agreements and the Federal Arbitration Act, 9 U.S.C. §§1, *et seq.*, hereby removes this civil action pursuant to 28 U.S.C. §§ 1446 and 1332(d) (the Class Action Fairness

---

[1] Datavant is improperly identified in the case caption for the above-reference action as "Datavant, Inc., as successor by merger to Ciox Health, LLC d/b/a Ciox Health." (Declaration of Cheryl Schmidt, attached hereto as Exhibit 1, ¶ 5). Though there was a merger of the two companies Datavant, Inc. and Ciox Health, LLC, the surviving legal entity is responsible for providing the release-of-information services for its Florida facility customers, including but not limited to the Facility Defendants, is "Ciox Health, LLC d/b/a Datavant." (*See id.*).

Act or "CAFA") from the Circuit Court in and for Palm Beach County, Florida, to the United States District Court for the Southern District of Florida, West Palm Beach Division. A copy of this notice is being filed with the Circuit Court. This removal is appropriate based on the following grounds:

1. On February 6, 2025, Stacey Garbowit and Alley McInnis ("Plaintiffs"), both of whom are adult individuals, commenced this action by filing a Summons and Complaint (the "Complaint" or "Compl.") in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 2025CA001085 (the "State Court Action"). Plaintiffs' claims arise out of allegations that Datavant charged certain requestors of copies of medical records fees that exceeded the applicable statutory maximums outlined in Fla. Stat. §395.3025(1) (the "Hospital Statute"). (Compl. ¶¶ 3, 15-30). True and correct copies of the Summons, Complaint, and other documents filed in the State Court Action are attached hereto as Exhibit 2.

2. On February 11, 2025, Plaintiffs served the Complaint on Defendants. (*See* Ex. 2, p. 62–64). Thus, this Notice of Removal is timely under 28 U.S.C. § 1446(b) because 30 days have not elapsed since Defendants received the Complaint. (*See id.*).

3. Plaintiffs allege that they bring this action on their own behalf and on behalf of a proposed class consisting of, "[f]or the period from four (4) years before the filing of this action through the date of entry of judgment herein (the "Class Period"), all natural persons in Florida who, individually or through an authorized representative, requested access to the medical records and who, in violation of Florida law, were charged an excessive fee to obtain electronic access to their healthcare records by Defendant, Datavant, acting on behalf of a hospital." (Compl. ¶ 40). Plaintiffs' class definition expressly excludes "the presiding judge and any members of his or her immediate family, present and former officers and directors of the Defendants, all current

employees of the Defendants and Defendants' legal representatives, agents, attorneys, successors, or assigns." (*Id.* at ¶ 41). Plaintiffs' class definition also expressly excludes "any federal, state, or governmental entities and any jurors assigned to this action." (*Id.*).

4. Plaintiffs state that their proposed class consists of "hundreds, if not thousands" of members. (*See id.* at ¶ 43).

5. Though Plaintiffs seek "damages that exceed $50,000," Plaintiffs allege that Defendants are liable for damages in an unspecified amount for charging fees that allegedly exceed the statutory maximums allowed under the Hospital Statute in each of their counts against Defendants for violations of Florida's Deceptive and Unfair Trade Practices Act. (*See id.* at ¶ 5 and Counts I-III). Plaintiffs seek (1) declaratory judgment in support of their interpretation of the applicable statutory maximums allowed under the Hospital Statute, (2) a temporary and/or permanent injunction requiring Defendants to cease from charging fees that exceed Plaintiffs' interpretation of the applicable statutory maximums allowed under the Hospital Statute, and (3) an award of actual damages, interest, costs and attorneys' fees. (*See id.* at Counts I-III).

6. Removal of this action to the United States District Court is proper under 28 U.S.C. § 1441(a) and (b) because there is minimal diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $5,000,000. The United States District Court would, therefore, have had original jurisdiction of this matter under 28 U.S.C. § 1332(d) had the action been brought in federal court originally.

7. Further, Plaintiffs filed this action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, which is located within the Southern District of Florida, West Palm Beach Division. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. §1441(a) because it encompasses the county in which the State Court Action is pending.

## AT LEAST ONE PLAINTIFF IS A CITIZEN OF A DIFFERENT STATE THAN AT LEAST ONE DEFENDANT.

8.  Plaintiffs allege they are both residents of the State of Florida. (Compl. ¶¶ 7–8).

9.  Datavant is a limited liability company originally organized under the laws of Georgia with its principal place of business in Arizona. (Schmidt Decl., ¶ 6). Thus, under 28 U.S.C. §1332(d)(10), Datavant is considered to be a citizen of Georgia and Arizona.

10. Datavant's sole member is Smart Holdings Corp., a corporation organized under the laws of Delaware with its principal place of business in Arizona. (Schmidt Decl., ¶ 6). Thus, even if 28 U.S.C. §1332(d)(10) were inapplicable, Datavant is a citizen of Delaware and Arizona.

11. Regardless of whether Datavant is deemed to be a citizen of Georgia and Arizona or Delaware and Arizona, what is clear is that Datavant is not a citizen of Florida, and CAFA's minimum diversity requirement is met. *See* 28 U.S.C. §1332(d)(2)(A).

## THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

12. Considering, among other things, Plaintiffs' allegations relating to the number of requests Datavant fulfills annually, Datavant's release-of-information services provided for the various hospitals across Florida (the "Florida Facilities"), and the difference in amount of fees charged by Datavant with what Plaintiffs' allege Datavant should charge, the amount in controversy in this case exceeds $5,000,000, exclusive of interest and costs. (*See* Schmidt Decl. Ex. 2, at ¶¶ 7-8).

13. Plaintiffs defines the proposed class as follows:

> For a period of four (4) years before filing of this action through the date of entry of judgment herein (the "Class Period"), all natural persons in Florida who, individually or through an authorized representative, requested access to their medical records and who, in violation of Florida law, were charged an excessive

4

fee to obtain electronic access to their healthcare records by Defendant, Datavant, acting on behalf of a hospital.[2]

(Compl., ¶ 40).

14. "In calculating the amount-in-controversy, 'the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of [$5 million], exclusive of interest and costs.'" *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1046 (11th Cir. 2020). "[T]he amount-in-controversy analysis focuses on how much is in controversy *at the time of removal*, not later . . . [a]nd the pertinent issue is not how much the plaintiffs are likely to ultimately recover, 'it is an estimate of the amount that will be put at issue in the course of the litigation.'" *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 927 (11th Cir. 2019) (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) and quoting *Dudley v. Eli Lilly & Co*, 778 F.3d 909, 913 (11th Cir. 2014)) (emphasis in original).

15. Plaintiffs' allegations make it difficult to identify with specificity what particular group of requesters are at issue and what particular charges and fees are being challenged. (*See generally* Compl.). For example, Plaintiffs challenge the "per page" and "electronic archive" fees charged for electronic copies of medical records, but also reference the "basic fee" charged. (*See id.* at ¶¶ 26, 28 and Ex. 1 thereto). Notwithstanding the uncertainty of Plaintiffs' allegations, Plaintiffs also allege that the maximum fees permitted under the Hospital Statute for electronic copies records is "$2.00 and an additional $1.00 for each year of records requested." (*See id.* at ¶ 24). Accordingly, for purposes of this Notice of Removal only, Defendants rely on this allegation

---

[2] Plaintiffs' class definition expressly excludes "the presiding judge and any members of his or her immediate family, present and former officers and directors of the Defendants, all current employees of the Defendants and Defendants' legal representatives, agents, attorneys, successors, or assigns." (Compl., ¶ 41). Plaintiffs' class definition also expressly excludes "any federal, state, or governmental entities and any jurors assigned to this action." (*Id.*).

in determining Plaintiffs' interpretation of the maximum fees permitted under the Hospital Statute. (*See* Schmidt Decl., ¶ 7).

16.     Plaintiffs also appear to challenge the fees charged to patients and their attorneys retained to prosecute the patient's personal injury claim, but also make references through their Complaint to fees charged to "designated recipients [or] representatives," "legal representatives" and "authorized representative" without clarifying who they allege may be a designated, legal or authorized "representative." (*See* Compl., ¶¶ 18-20, 28, 33, 40). Notwithstanding the uncertainty of Plaintiffs' allegations, Plaintiffs attach three Datavant invoices to the Complaint as examples of instances in which Plaintiffs' attorneys were charged more than Plaintiffs' interpretation of the maximum fees permitted under the Hospital Statute. (*See id.* at Ex. A). Accordingly, for purposes of this Notice of Removal only, Defendants rely on these allegations and Plaintiffs' reference to these invoices in determining the applicable requesters that may be within Plaintiffs' proposed class definition. (*See* Schmidt Decl., ¶ 7).

17.     Based on these allegations, Defendants have calculated the difference between (1) the amount actually charged to patient attorneys for electronic copies of medical records and (2) the maximum that Plaintiffs appear to allege is the permissible charge for each such copies (*i.e.*, $2.00). (*See id.*). This monetary difference reflects the total aggregate overcharge alleged by Plaintiffs in this case.[3]

---

[3]    Although—consistent with this Circuit's approach to CAFA's amount in controversy—Defendants undertake this calculation to attempt to quantify the value of Plaintiffs' allegation that Defendants charge "paper" rates for delivering "electronic" copies of records, Defendants vigorously dispute the premise of Plaintiffs' claims and allegations (and thus these calculation). The Hospital Statute is plain on its face that the *same* per-page fees apply both to electronic and printed paper records. The "nonpaper" exception to the general rule allowing charges of $1.00 per page for copies of records—on which Plaintiffs' base their claims—was designed to permit healthcare facilities to charge more when called upon to deliver costly physical "nonpaper" media (like microfilm or microfiche) to requestors. That exception was never intended to be used as Plaintiffs envision and was never contemplated to encompass electronic copies of records. In fact,

18. In their Complaint, Plaintiffs specifically include allegations of certain fees charged to their attorneys in excess of the maximum fees permitted under the Hospital Statute in instances in which their attorneys requested and received electronic copies of records. (*See* Compl., ¶¶ 5, 37-39 at Ex. A). In reviewing the first sample invoice, Plaintiffs' attorneys were charged $202.00 in "per page" fees, $2.00 in "electronic data archive" fees and $1.00 in "basic" fees, for a total charge amount of $205.00 (the "First Invoice"). (*See id.* at Ex. A, p. 1). Relying on Plaintiffs' allegations as to the maximum fees permitted under the Hospital Statute, Plaintiffs allege their attorneys were overcharged at least $202.00 for the First Invoice. (*See id.* at ¶ 24 and Ex. A, p. 1; *see also* Schmidt Decl., ¶ 7). Next, in reviewing the third sample invoice, Plaintiffs' attorneys were charged $97.00 in "per page" fees, $2.00 in "electronic data archive" fees and $1.00 in "basic" fees, for a total charge amount of $100.00 (the "Third Invoice"). (*See* Compl., Ex. A, p. 3). Relying on Plaintiffs' allegations as to the maximum fees permitted under the Hospital Statute, Plaintiffs allege their attorneys were overcharged at least $98.00 for the Third Invoice. (*See id.* at ¶ 24 and Ex. A, p. 1; *see also* Schmidt Decl., ¶ 7).[4]

19. Relying on Plaintiffs' allegations as to the alleged overcharges for the First Invoice, Datavant's preliminary investigation into this matter shows that during Plaintiffs' proposed Class

---

a Florida court recently dismissed a nearly identical cause of action on this exact same issue in *Demaree v. Lee Memorial Health System*, Lee County, Florida Circuit Court (Case 22-CA-000224) (Dec. 21, 2022), finding that "electronic records fall into the general category of charges for copies of patient records for which defendant may charge $1.00 per page." Thus, to be clear, Defendants adamantly deny that they have done anything wrong or that Plaintiffs are entitled to any damages (because they are not). Defendants are merely providing these calculations for jurisdictional purposes based on Defendants' understanding of Plaintiffs' claims.

4   Plaintiffs also include a second sample invoice in which Plaintiffs' attorneys were charged $2.00 in "electronic data archive" fees, for a total charge amount of $2.00 (the "Second Invoice"). (*See* Compl., Ex. A, p. 2). However, it is not clear to Defendants what amount, if any, Plaintiffs allege their attorneys were overcharged for the Second Invoice. (*See id.*).

Period, Datavant processed more than 30,000 hospital requests submitted by patient attorneys to Florida Facilities for which Datavant charged $205.00 or more. (Schmidt Decl., ¶ 8). And by applying Plaintiffs' method of calculating alleged overcharges for each of these hospital requests—at least $202.00—Datavant's preliminary investigation into this matter confirms that amount in controversy for these hospital requests alone exceeds $5 million. (*Id.*). Because the amount in controversy for these invoices alone exceeds $5 million in alleged overcharges, it is not necessary, at this time, for Defendants to calculate the number of hospital requests submitted by patient attorneys for which Datavant charged less than $205.00, but more than the maximum Plaintiffs allege is the permissible charges (*i.e.*, $2.00). However, Defendants reserve their right to provide additional evidence in support of these additional actual damages sought by Plaintiffs in the event Plaintiffs challenge Defendants' preliminary calculations based on the more than 30,000 hospital requests charged more than $205.00. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014) (allowing the removing party to submit evidence supporting its allegations of the amount in controversy if the plaintiff contests such allegations).

20. In addition to alleged actual damages, the value of Plaintiffs' requested declaratory and injunctive relief may also be included in the amount in controversy. *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (amount in controversy for plaintiffs' claim for declaratory judgment exceeded CAFA's $5 million jurisdictional requirement). Here, because the actual damages at issue in this matter alone exceed $5 million in amount in controversy, it is not necessary for the parties to determine the "monetary value" of Plaintiffs' declaratory or injunctive relief at this time. However, Defendants reserve their right to provide additional evidence in support of the monetary value of the declaratory or injunctive relief sought

by Plaintiffs in the event Plaintiffs challenge Defendants' preliminary investigation of the amount in controversy in this matter. *See Dart Cherokee*, 574 U.S. at 89.

21. Additionally, the value of the attorneys' fees sought by Plaintiffs pursuant to Fla. Stat. §501.2105 and/or §501.2111 may also be included the calculation of the amount in controversy. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy."). Here, however, because the actual damages at issue in this matter alone exceed $5 million in amount in controversy, it is not necessary for the parties to determine a reasonable amount of attorneys' fees to include in the amount in controversy. However, Defendants reserve their right to provide additional evidence in support a reasonable amount of attorneys' fees to include in the amount in controversy in the event Plaintiffs challenge Defendants' preliminary investigation of the amount in controversy in this matter. *See Dart Cherokee*, 574 U.S. at 89.

22. The Eleventh Circuit has opined that, to satisfy the amount in controversy element, the removing party must simply include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014). In fact, the Eleventh Circuit has also noted that in some cases the removing party "may be better-situated to accurately assess the amount in controversy" because the removing party has the ability to review its evidence on the value of a plaintiff's claims. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010); *see also Lee-Bolton v. Koppers Inc.*, 848 F. Supp. 2d 1342, 1354 (N.D. Fla. 2011)

23. "That is the end of the matter, unless 'the plaintiff contests, or the court questions, the defendant's allegation.'" *Id.* Even then, the removing party only needs to prove by a

preponderance of the evidence that the amount in controversy more likely than not exceeds the $5 million jurisdictional requirement. *See Pretka*, 608 F.3d at 752. The removing party may do so by introducing "affidavits, declarations, or other documentation." *See id.* at 755 (collecting cases).

24. Here, Defendants have more than met their burden of establishing that the amount in controversy exceeds $5 million, exclusive of interest and costs. Not only do Plaintiffs' alleged actual damages exceed the $5 million, but the value of Plaintiffs' declaratory and injunctive relief claims and claim for attorneys' fees further increases the amount in controversy.

### THE CLASS SIZE IS IN EXCESS OF 100 MEMBERS

25. Plaintiffs expressly allege that they seek to represent a class "in excess of one-hundred (100) in number and more likely . . . hundreds, if not thousands, of persons." (Compl. ¶ 43). As noted above, Defendants' own investigation has revealed that, based on undersigned counsel's understanding of the purported class, there are more than several thousands of class members. (*See* Schmidt Decl., ¶ 8). Thus, the class size requirement for CAFA jurisdiction is met.

### NO EXCEPTION TO CAFA JURISDICTION APPLIES

**A.  THE "LOCAL CONTROVERSY" EXCEPTION.**

26. The "local controversy" exception, 28 U.S.C. § 1332(d)(4)(A)(i), "requires a district court to decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1155 (11th Cir. 2021). This exception also requires there to not have been any other class actions asserting "the same or similar factual allegations" against any of the defendants during the 3-year period prior to the filing

of this action. 28. U.S.C. § 1332(d)(4)(A)(ii); *see also Hill v. Nat'l Ins. Underwriters, Inc.*, 641 F. App'x 899, 902 (11th Cir. 2016)

27. None of the elements necessary to trigger the "local controversy" exception are present in this case.

28. First, Plaintiffs' "class definition does not establish the citizenship of the class members for purposes of the first requirement of CAFA's local controversy exception." *Smith*, 991 F.3d at 1157. In *Smith*, the Eleventh Circuit held that the plaintiffs' class definition failed to establish the citizenship of the class members for purposes of the first requirement of CAFA's local controversy exception because (1) the class definition did not limit itself to current Florida citizens and (2) Plaintiffs were unable to produce sufficient evidence of the class members' current citizenship. *Id.* at 1157–58. Here, Plaintiffs' class definition similarly fails to limit itself to Florida citizens and includes any person who is or was "in Florida" "[f]or the period from four (4) years before the filing of this action through the date of entry of judgment[.]" (*See* Compl., ¶ 40). Just like in *Smith*, there is nothing in the class definition limiting itself to current Florida residents or providing the Court a basis to remand based on the "local controversy" exception. *Id.* at 1157 ("Because citizenship for purposes of CAFA jurisdiction is based on *current residency* and an intent to remain, the class definition does not aid the class in establishing either prong of the citizenship requirement.") (emphasis in original); *see also Simring v. GreenSky, LLC*, 29 F.4th 1262, 1267–68 (11th Cir. 2022) (finding that the class definition in plaintiff's complaint did not restrict class membership to Florida citizens and failed the citizenship prong of the "local controversy" exception). To date, Plaintiffs also have not attempted to prove the class members' current citizenship, but, in any event, they would be unable to do so with sufficient evidence to satisfy the Court.

29. Second, "CAFA's local controversy exception requires plaintiffs to show that at least one defendant 'from whom significant relief is sought' and 'whose alleged conduct forms a significant basis for the claims' is a 'citizen of the state in which the action was originally filed.'" *Smith*, 991 F.3d at 1160 (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(II)). "Such an individual is termed the 'significant defendant.'" *Id.* Here, Plaintiffs seek significant relief only from Datavant, and Plaintiffs' Complaint makes expressly clear that it is Datavant's alleged conduct alone that forms the basis of their claims against Defendants. Moreover, Datavant services far more Florida medical entities than the Facility Defendants, and Plaintiffs' putative class is not limited to persons who requested records from those two facilities. (*See* Compl., ¶ 40). In fact, Plaintiffs' class is specifically linked to those individuals who made requests to Datavant—not the Facility Defendants or any other specific healthcare facility. As such, the overwhelming amount of monetary damages being sought are being sought against Datavant—not the Facility Defendants. Additionally, Count III—which appears to be only the Count directly addressed at the Facility Defendants—seeks damages for the Facility Defendants' alleged vicarious liability for Datavant's purported conduct. (*See id.* at ¶¶ 97-102). Accordingly, Datavant is the only "significant defendant," and Datavant is not a citizen of Florida. (*See* Schmidt Decl., ¶ 5).

30. Third, there is no indication anywhere in the Complaint that the putative class incurred injuries in Florida arising from the alleged conduct.

31. In fact, when Datavant fulfills requests for copies of medical records for its facilities in Florida, including not but limited to the Facility Defendants, a significant amount of resources used in the release-of-information process are located at outside Florida. (*See id.* at ¶ 9). This includes the servers required to process the requested medical records for copying and delivery, the servers used by Datavant to deliver and store the requested copies, and the materials and tools

used to process the requested copies and finalize for delivery. (*See id.*). Thus, even when healthcare facilities are located in Florida (like the Facility Defendants), a significant amount of resources physically located outside of Florida are used to provide the release-of-information services for these facilities, including the Facility Defendants. (*See id.*).

32. Next, the "local controversy" exception is inapplicable because a recent putative class action, *Demaree v. Lee Memorial Health System*, Lee County, Florida Circuit Court (Case 22-CA-000224) (Dec. 21, 2022), relied on the same or similar facts as the present case and was filed within the last three years. *See Hill*, 641 F. App'x at 902. In addition to *Demaree*, there have been other putative class actions that have been filed against Datavant (or Ciox) within the 3-year period alleging improper charges for copies of medical records. Such class actions have been filed in several states including at least Maryland. *See Hoggard v. Ciox Health, LLC*, Civ. No. DLB-23-3457, filed in 2023 in the Maryland Circuit Court and removed to the District Court for the District of Maryland; *see also Pugh v. Ciox Health, LLC*, Civil Action No. 8:22-cv-617-PX, filed in 2022 in the Maryland Circuit Court and removed to the District Court for the District of Maryland.

33. Finally, the Eleventh Circuit has expressly recognized that "the local controversy is a narrow exception, 'with all doubts resolved in favor of exercising jurisdiction over the case.'" *Smith*, 991 F.3d at 1159 (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006)).

34. For these reasons, the "local controversy" exception to CAFA does not exist in this case.

**B.     THE "HOME-STATE" EXCEPTION.**

35.    The "home-state" exception, 28 U.S.C. § 1332(d)(4)(B), "applies if 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Hunter v. City of Montgomery, Alabama*, 859 F.3d 1329, 1335 (11th Cir. 2017).

36.    Again, neither element of the "home-state" exception has been or could be met in this case.

37.    First, for the reasons stated above as to the "local controversy" exception, the citizenship element has not and cannot be met.

38.    Second, even if the citizenship element could be met, the Court would then need to determine that *all* of the primary defendants must be citizens of Florida for the "home-state controversy" exception to apply. *See* 28 U.S.C. § 1332(d)(4)(B).

39.    However, for the same reasons that Datavant is the only "significant defendant" in this case as discussed above, Datavant is also the only "primary defendant." And because Datavant is not a citizen of Florida the "home state exception to the exercise of jurisdiction does not apply[.]" *See Hunter*, 859 F.3d at 1335.

**C.     THE "DISCRETIONARY" EXCEPTION.**

40.    In addition to the "local controversy" and "home state" exceptions to CAFA jurisdiction, a district court "may, in the interest of justice and looking at the totality of the circumstances," decline to exercise jurisdiction under CAFA. *See* 28 U.S.C. § 1332(d)(3) (listing the circumstances considered); *see also Smith*, 991 F.3d at 1161.

41.    "However, in order to exercise that discretion, the district court must find two preliminary conditions are met: (1) greater than one-third but less than two-thirds of the aggregate

members are citizens of the state in which the class action was originally filed; *and* (2) the primary defendants are citizens of the state in which the class action was originally filed." *Smith*, 991 F.3d at 1161 (emphasis in original).

42. For the reasons stated above, neither element of the discretionary has been or can be met here. *Id.* at 1162–63 (finding that one of the primary defendants' non-Florida citizenship destroyed the plaintiffs' ability to invoke the "discretionary" exception).

## PROCEDURAL REQUIREMENTS

43. As noted above, pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon or otherwise received by Defendants are attached as Exhibit 2.

44. Promptly after the filing of this Notice of Removal, Defendants will notify Plaintiffs and the Clerk of Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida that this case has been removed.

**WHEREFORE**, Defendants respectfully request that this Court take jurisdiction of this action and issue all necessary orders and process to remove this action from the Circuit Court in and for Palm Beach County, Florida, to the United States District Court for the Southern District of Florida, West Palm Division.

Dated this 13th day March, 2025.

> */s/Andrew T. Sarangoulis*
> Andrew T. Sarangoulis, Esq. (Fla. Bar No. 1002608)
> **BURR & FORMAN LLP**
> 200 E Broward Blvd., Suite 1020
> Fort Lauderdale, Florida 33301
> T: (954) 414-6222 F: (954) 414-6201
> Primary Email: asarangoulis@burr.com
> Secondary Email: elisalopez@burr.com
> *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of March, 2025, I electronically filed the foregoing document with the Clerk of the Court using *CM/ECF*, which will serve notice upon all parties listed in the following Service List.

*/s/ Andrew T. Sarangoulis*
Andrew T. Sarangoulis, Esq.

## **SERVICE LIST**

William J. Cornwell, Esq.
wjc@whcfla.com
filings@whcfla.com
nw@whcfla.com
David K. Friedman, Esq.
dkf@whcfla.com
gg@whcfla.com
Miranda N. Springfield, Esq.
mns@whcfla.com
jn@whcfla.com
WEISS, HANDLER & CORNWELL, PA
Counsel for Plaintiffs
One Boca Place, Suite 205E
2255 Glades Road
Boca Raton, FL 33431
(561) 997-9995; Fax: (561) 997-5280

Bruce F. Silver, Esq.
SILVER & SILVER, PA
6100 Glades Road, Suite 201
Boca Raton, FL 33434
Telephone: (561) 488-3344
Facsimile: (561) 488-5899
bruce@silverinjurylaw.com

*Co-Counsel for Plaintiffs*

60371597 v1